UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/29/2016
```

GIGI JORDAN,

                              Petitioner,

                    v.

DEPARTMENT OF JUSTICE, FEDERAL
BUREAU OF INVESTIGATION, UNITED
STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES, and THE
ATTORNEY GENERAL OF THE UNITED
STATES,

                              Respondents.

No. 15-CV-1028 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Gigi Jordan brings this Petition to enforce her rights under the Crime Victims'
Rights Act ("CVRA"), 18 U.S.C. § 3771, alleging that she is a victim of federal crimes perpetrated
by her former husband. Respondents the Department of Justice ("DOJ"), the Federal Bureau of
Investigation ("FBI"), the United States Department of Health and Human Services ("HHS"), and
the Attorney General of the United States (collectively, the "Government") move to dismiss the
Petition, arguing that Jordan is not entitled to any remedies under the CVRA. Because the
Government has already provided Jordan all the CVRA rights to which she is presently entitled,
the motion is granted.

## BACKGROUND[1]

Jordan asserts that, between 1991 and the present, she "was the victim of a massive, far reaching scheme of fraud, forgery, conversion, threats and intimidation engineered by Raymond A. Mirra, Jr.," her former husband. Pet. ¶ 1. She alleges that "Mirra, and others at his direction, used over *190 documents forged with Jordan's signature* in the commission of multiple acts of bank, mail and wire fraud." *Id.* ¶ 6 (emphasis in original). The details of Mirra's alleged schemes are set forth both in the Petition and a civil complaint currently pending in the District of Delaware, which is "incorporated [in the Petition] by reference." *Id.* ¶ 7 & Ex. A (Compl., *The Hawk Mountain LLC v. Raymond A Mirra*, Jr., No. 13-CV-2083 (SLR) (D. Del. Jul. 9, 2014) ("Ex. A")). These filings allege that Mirra, among other things, opened fraudulent brokerage accounts, initiated illegal wire transfers, stole real property, and unlawfully profited from the sale of Jordan's company to a corporation Mirra runs. *See, e.g.*, Ex. A ¶¶ 59, 69, 225, 317. She further alleges that between 2008 and 2010, Mirra "engaged in a series of acts of harassment, intimidation and coercion of Jordan, as well as direct threats to her life . . . designed to prevent Jordan from discovering the conversion of her assets, asserting her rights to the assets, and to deter her from reporting Mirra's financial wrongdoing to law enforcement authorities." Pet. ¶ 10.

In addition to those acts "directly victimiz[ing her]," *id.* at 3, Jordan alleges that "beginning in or about 1994," Mirra "embarked upon a multi-tiered plan" to perpetuate several healthcare frauds, *id.* ¶ 11, including "black-marketing HIV/AIDS drugs, drug diversion, money laundering and Medicaid fraud schemes," *id.* ¶ 85. She asserts that "the monies expended, invested and otherwise utilized by Mirra and the enterprise, in the criminal transactions involving [the healthcare companies] were in whole or in significant part the proceeds of the fraud and conversion

---

[1] Except as otherwise noted, the facts set forth herein are taken from the Petition and are presumed to be true for the purposes of this motion to dismiss.

of Jordan's rightful assets," *id.* ¶ 35, and that the illegal proceeds were laundered through new accounts opened in her name without her knowledge, *id.* ¶ 9.

Jordan alleges that in 2011 "an attorney acting on Jordan's behalf, arranged to meet with [an Assistant United States Attorney ("AUSA") from the U.S. Attorney's Office for the Southern District of New York ("SDNY")] . . . to discuss the vast financial fraud conducted against Jordan by Mirra." *Id.* ¶ 36. Jordan claims that prior to the meeting, she discussed these frauds over the phone with the FBI, "provid[ing] overwhelming information to support that Mirra was operating a complex criminal enterprise." *Id.* ¶ 38. She also asserts that she "sent extensive documentation to [the AUSA] that detailed the enterprise's fraudulent financial activity." *Id.* ¶ 39. In May 2011, Jordan's attorney met with the SDNY AUSA "in an hour-long meeting" during which the attorney "provided everything law enforcement would need in an investigation related to Mirra and his associates[]." *Id.* The lawyer also provided the evidence to another SDNY AUSA. *Id.* ¶¶ 47–48. Jordan asserts that, despite the SDNY AUSA's alleged initial "interest in the matter," *id.* ¶ 40, "[n]either Jordan nor her attorneys were ever informed of the status or progress of any investigation in the Southern District of New York," *id.* ¶ 48.

Jordan also alleges that she twice "sent the documentary materials to law enforcement in . . . Pennsylvania," including several FBI agents and three AUSAs from the U.S. Attorney's Office for the Eastern District of Pennsylvania ("EDPA"). *Id.* ¶¶ 44, 49. Although prosecutors did not initially respond, Jordan eventually received a phone call from the EDPA's "First Ass[istant] US Attorney Louis Lappen . . . responding to [her] voicemail message." *Id.* ¶ 50. Lappen allegedly asked that the materials be resent and "was apologetic saying he was going to look into why no one had responded to the documents sent and said he would be referring this to . . . the (then) Chief of their Criminal Division." *Id.* After this phone call, "[n]either Jordan nor

3

her attorneys were ever informed of the status or progress of any investigation in the Eastern District of Pennsylvania." *Id.* ¶ 51.

In late 2011, Jordan contacted HHS's Office of Inspector General, which led to two meetings with HHS officials and FBI agents in December 2011 and June 2012. *Id.* ¶¶ 53, 55–58. She alleges that, during these meetings, "[t]he targeted specificity and scope of their questions was entirely consistent with the notion that these matters were being investigated as potential criminal RICO violations, with Mirra as the enterprise's focal point." *Id.* ¶ 54. Throughout this period, Jordan's attorneys and federal law enforcement remained in contact by email. *Id.* ¶¶ 53–60. Following the meetings, Jordan asked to speak with prosecutors working on these cases from the SDNY. *Id.* ¶¶ 61, 63. She alleges that she was denied the opportunity to do so because "the District Attorney of New York, the agency prosecuting Jordan for charges unrelated to the Mirra investigation[,] . . . requested that there be no face-to-face meeting between Jordan and federal prosecutors." *Id.* ¶¶ 68, 71.[2]

On July 17, 2012, the SDNY held a press conference to announce "a complaint . . . alleging a massive Medicaid fraud involving a black market in HIV/AIDS drugs." *Id.* ¶ 28. Jordan asserts that although "Mirra does not appear as a defendant in any of the pending indictments, nor is he mentioned by name in the body of any of the complaints, indictments or superseding indictments[, by] virtue of his long-standing status as principle of [some of the healthcare companies under investigation], he had to have been either a person of interest, a subject or a target of this wide-ranging multi-agency investigation." *Id.* ¶ 33. According to Jordan, Mirra's "omission from any existing indictments bespeaks a wider, ongoing investigation with the context

---

[2] As noted in the Petition, in February 2010, Jordan was arrested and charged by the New York County District Attorney's Office with the murder of her son. Pet. ¶ 10 n.1. In November 2014, she was convicted of manslaughter under extreme emotional disturbance. *Id.*

4

of a potential RICO prosecution," *id.* ¶ 34, and "[t]he [existing] indictment is predicated on criminal acts, including among other things, mail fraud and wire fraud, which usually lay at the heart of a typical RICO investigation and or prosecution," *id.* ¶ 32. Jordan alleges that while she requested meetings with prosecutors after the indictment was filed, the Government refused her requests. *See id.* ¶¶ 63, 71–72.

After Jordan filed the instant action to enforce the rights she claims were denied to her under the CVRA, the Government moved to dismiss. On March 24, 2016, the Court held oral argument.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the Court must accept all factual allegations in the petition as true and draw all reasonable inferences in the plaintiff's favor. *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012). To survive a motion to dismiss, however, a petition "'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "'Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 430 (2d Cir. 2011)).

5

## DISCUSSION

Enacted in 2004, the CVRA guarantees victims of federal crimes an array of substantive and participatory rights. *See In re Rendon Galvis*, 564 F.3d 170, 174 (2d Cir. 2009). The statute was enacted to correct a criminal justice system that, as Senator Dianne Feinstein put it, had become "out of balance—while criminal defendants have an array of rights under law, crime victims have few meaningful rights." 150 Cong. Rec. S4260-01 (daily ed. Apr. 22, 2004). While cautioning that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction," 18 U.S.C. § 3771(d)(6), Congress passed the CVRA to ensure that actors in the criminal justice system "care about both the rights of accused and the rights of victims," 150 Cong. Rec. S4260-01 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein). To that end, the statute entitles victims—defined as those "directly and proximately harmed as a result of the commission of a Federal offense"—to ten rights that apply at various stages of a criminal prosecution. 18 U.S.C. § 3771(e)(2)(A). Jordan invokes four of those rights: (1) "The reasonable right to confer with the attorney for the Government in the case"; (2) "The right to proceedings free from unreasonable delay"; (3) "The right to be treated with fairness and with respect for the victim's dignity and privacy"; and (4) "The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement." 18 U.S.C. § 3771(a)(5), (a)(7)–(9); Pet. at 3; Oral Arg. Tr. 41:21–23.

Jordan alleges that she was a victim of two distinct categories of federal crimes that entitle her to CVRA remedies. First, the Petition alleges that "Mirra directly victimized Jordan through a series of federal criminal offenses, including but not limited to mail fraud, wire fraud, money laundering, and racketeering," Pet. at 3, as well "forgery, conversion, threats and intimidation," *id.* ¶ 1 (the "Financial Frauds"). In short, Jordan alleges that Mirra took large amounts of money

6

from her banking and brokerage accounts without her knowledge or permission. *See id.* at 3–4. She asserts that she is a "direct" victim of the Financial Frauds because they were perpetrated directly—and exclusively—against her. *See id.* Second, the Petition alleges that "[i]n addition, Mirra was at the forefront of a criminal enterprise which engaged in a massive scheme of healthcare fraud," *id.* at 3, which included "black-marketing HIV/AIDS drugs, drug diversion, money laundering and Medicaid fraud schemes," *id.* ¶ 85 (the "Healthcare Frauds"). Jordan alleges that, for the Healthcare Frauds, she is a victim because her "divested assets were used for . . . financing" the frauds, *id.* at 3, and the illicit proceeds were laundered through new bank accounts that Mirra opened in her name, *id.* ¶ 9. Finally, in the event the Court does not grant Jordan CVRA remedies for the Financial or Healthcare Frauds, the Petition asserts an alternative theory that combines the two categories of offenses. Under this theory, Mirra's alleged criminal actions, when examined together, constitute a criminal conspiracy under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq. See, e.g.*, Pet. ¶¶ 33–35. Jordan argues that both the Financial Frauds perpetrated directly against her and the illegal Healthcare Frauds are predicate acts of this larger RICO enterprise.

Even assuming the facts alleged in the Petition to be true, each of Jordan's claims must fail. Jordan, who has already had the opportunity to confer with the Government, is not presently entitled to any additional remedies in connection with the investigation of the Financial Frauds, is not a victim of the Healthcare Frauds, and is unable to demonstrate that an investigation into the proposed RICO enterprise would cause any additional CVRA rights to accrue.

I.    **Financial Frauds**

The Financial Frauds allegedly perpetrated directly against Jordan include fraud, forgery, conversion, threats, and intimidation—all of which arise from the purported theft of her funds.

Pet. at 3–4; *id.* ¶ 1. Jordan argues that, for the Financial Frauds, the Government failed to provide her CVRA rights to conferral, to proceedings free from unreasonable delay, and to treatment that is fair and respectful. Before determining whether Jordan is entitled to any of these rights, however, the Court must address two threshold questions.

First, the Court must evaluate whether Jordan is a "victim" of the Financial Frauds as that term is defined by the CVRA. She is. The CVRA requires "that the victim be 'directly and proximately harmed' [which] encompasses the traditional 'but for' and proximate cause analyses." *Galvis*, 564 F.3d at 175 (quoting 18 U.S.C. § 3771(e)(2)(A)). Jordan adequately alleges that she was a victim of the Financial Frauds under this standard by asserting that funds were illegally withdrawn directly from her banking and brokerage accounts without her consent. *See, e.g.*, Pet. ¶ 9 ("Jordan was the targeted victim of Mirra's enterprise and the massive thefts of her funds."). Such allegations are sufficient to allege that Jordan is a victim of the Financial Frauds.

Second, as some CVRA rights apply only once a criminal case reaches a specific stage— as is the case regarding "[t]he right to be reasonably heard at . . . sentencing," 18 U.S.C. § 3771(a)(4)—the Court must determine the stage to which the Government's prosecution of the Financial Frauds has advanced. Jordan alleges that the Government is actively investigating Mirra for these frauds. *See* Pet. at 3 ("These acts were separately and jointly the subject of ongoing criminal investigations by federal law enforcement agencies."). In the Petition, she supports this conclusion by alleging that prosecutors received the documentary evidence she provided, *see e.g.*, *id.* ¶¶ 39, 50, "expressed interest" in pursuing a prosecution, *id.* ¶¶ 40, 50, and interviewed at least one witness, namely herself, *see, e.g.*, *id.* ¶ 38. Despite the Government's representation that it never "opened any such investigation," Resps.' Reply Mem. 2,[3] the Court must accept Jordan's

---

[3] More specifically, the Government represented in its reply brief "that neither [SDNY nor EDPA] opened any such investigation or, *a fortiori*, entered into a plea agreement or deferred prosecution agreement. Nor is [SDNY

plausible allegations as true, and thus will presume—solely for the purpose of evaluating the instant motion—that the Government is investigating Mirra for the Financial Frauds.[4]

The parties' dispute thus centers on if and when CVRA rights are enforceable prior to the Government's charging of a particular crime. *See* Pet.'s Mem. 8; Resps.' Mem. 6–7. Although a few courts have considered whether CVRA rights attach during the negotiation of a pre-indictment disposition, the Court is unaware of any opinion to address whether a victim's CVRA rights attach *prior* to such negotiations.[5] This Court, however, need not do so here. Even assuming that some CVRA rights attach as early as when the Government receives information about a potential crime and begins to investigate, taking all the allegations in the Petition to be true, the Government has satisfied its CVRA obligations because it reasonably conferred with Jordan, did not unduly delay any proceedings, and accorded her the dignity and respect due crime victims. Finally, although Jordan seeks documents and information regarding ongoing or closed Government investigations, the CVRA does not provide for such a remedy.

---

or EDPA] aware of any other open criminal case in which Petitioner has been identified as a crime victim as defined by the CVRA." Resps.' Reply Mem. 2.

[4] Although the Petition also alleges that "upon information and belief Mirra and others involved in the fraud against Jordan described have received non-prosecution agreements or plea deals in regard to federal crimes," Pet. ¶ 88, at oral argument, counsel clarified that this allegation relates only to the Healthcare Frauds, and that Jordan possesses no facts that would permit her to plead the existence of a non-prosecution agreement or plea deal concerning the Financial Frauds. *See* Oral Arg. Tr. at 28:21–29:2.

[5] For example, while some courts have held that CVRA rights attach when the government negotiates such a disposition, others have found no right to exist prior to the filing of an accusatory criminal instrument. *Compare Does v. United States*, 817 F. Supp. 2d 1337, 1342 (S.D. Fla. 2011) ("[T]o avoid a strained reading of the [CVRA], those rights must attach before a complaint or indictment formally charges the defendant with the crime.") *with United States v. Daly*, No. 11-CR-121 (AWT), 2012 WL 315409, at *4 (D. Conn. Feb. 1, 2012) (finding that CVRA rights attach "no sooner than the point in time when an offense has been charged"); *In re Petersen*, No. 2:10-CV-298 RM, 2010 WL 5108692, at *2 (N.D. Ind. Dec. 8, 2010). Whether and when CVRA rights can be invoked at earlier points in a prosecution, such as at the investigatory stage, appears to have been explored at this point only in the academic literature. *See, e.g.*, Paul G. Cassell et. al., *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act Before Criminal Charges Are Filed*, 104 J. Crim. L. & Criminology 59 (2014); Elliot Smith, *Is There A Pre-Charge Conferral Right in the CVRA?*, 2010 U. Chi. Legal F. 407 (2010).

## A.   The Reasonable Right to Confer

Jordan asserts that the Government withheld "[t]he reasonable right to confer with the attorney for the Government in the case." 18 U.S.C. § 3771(a)(5).  In particular, she alleges that she requested but was denied meetings with prosecutors from the SDNY.  Pet. ¶¶ 61 ("Jordan . . . repeatedly ask[ed] to confer and consult with prosecutors.").  Because the right to confer is not absolute but rather "reasonable," the Government already fulfilled its conferral obligations under the CVRA with respect to its alleged investigation into the Financial Frauds.

Although a victim should—indeed must—have a reasonable and meaningful opportunity to confer with an attorney for the Government, the statue is clear that the right may not "impair the [Government's] prosecutorial discretion."   18 U.S.C. § 3771(d)(6).   Courts have thus interpreted the law to establish "only a requirement that the government confer in some reasonable way with the victims before ultimately exercising its broad discretion." *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008).  In other words, the CVRA "gives victims a voice, not a veto" over the Government's decision-making. *United States v. Rubin*, 558 F. Supp. 2d 411, 418 (E.D.N.Y. 2008); *see also United States v. Thetford*, 935 F. Supp. 2d 1280, 1282 (N.D. Ala. 2013) ("These rights, however, do not extend to giving crime victims veto power over the prosecutor's discretion."); *Does*, 817 F. Supp. 2d at 1343 ("[T]o the extent that the victims' pre-charge CVRA rights impinge upon prosecutorial discretion, under the plain language of the statute those rights must yield.").  The CVRA's legislative history supports the conclusion that while "[t]his right [to confer] is intended to be expansive," and allows for the victim to "confer with the government concerning any critical stage or disposition of the case," 150 Cong. Rec. S4260-01 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein), "[t]his right to confer does not give the crime victim any right to direct the prosecution." *Id.* (statement of Sen. Kyl).

Less clear is at what point during a criminal prosecution a victim can invoke her right to confer. While some courts have held that the Government does not "have an obligation under the CVRA to confer with [CVRA] petitioners until after a charge was filed," *Petersen*, 2010 WL 5108692, at *2, others have found that the statute mandates conferral before the Government consummates a pre-indictment plea bargain, *see, e.g.*, *Dean*, 527 F.3d at 394. Jordan asks this Court to extend the right even earlier in the prosecutorial process and require the Government to confer with CVRA victims before a prosecution has advanced beyond the investigatory stage. This Court need not make this determination, however, in light of "the specific facts and circumstances of this case." *Id.* Because the Petition does not allege that prosecution of the Financial Frauds has advanced beyond investigation, and even Jordan concedes that obligations to CVRA victims are "truncated . . . during an investigative stage, for obvious reasons," Oral Arg. Tr. 31:19–21, the Government fulfilled its reasonable conferral obligations when its attorney received and reviewed Jordan's documents and attended an hour-long meeting to discuss her allegations.

Jordan alleges that in April 2011, her attorney sought a meeting with a SDNY prosecutor "to discuss the vast financial fraud conducted against Jordan by Mirra." Pet. ¶ 36. In preparation for that meeting, her attorney "sent extensive documentation to [the prosecutor] that detailed the enterprise's fraudulent financial activity regarding Jordan's bank accounts, a full range of forged documents . . . as well as documents evincing forgeries." *Id.* ¶ 39. Jordan herself also "called the FBI in New York" in advance of the meeting and spoke with a FBI Special Agent working with SDNY prosecutors about her allegations. *Id.* ¶¶ 37–38. In addition, in May 2011, Jordan's counsel "met with [an] AUSA . . . of the Southern District of New York in an hour-long meeting" at which time the attorney "provided everything law enforcement would need in an investigation related to

Mirra and his associates." *Id.* ¶ 39.[6]  Thus, even if Jordan's reasonable right to confer with the attorney for the Government in the case had attached prior to the filing of criminal charges or negotiation of a pre-indictment disposition, SDNY prosecutors fulfilled their obligation when an AUSA received and reviewed the documents she submitted, met with her attorney, and listened to her allegations. "At least in the posture of this case (and we do not speculate on the applicability to other situations)," *Dean*, 527 F.3d at 394, the Government did not violate the CVRA.

To the extent the Petition alleges that Jordan is entitled to additional meetings with lawyers for other Government offices such as the EDPA, it is rejected.  As another district court observed, "[t]he CVRA cannot realistically be read to create upon mere citizen complaint a self-effectuating right . . . regardless of its impact on resources, any pending investigation or prosecutorial discretion." *United States v. Rubin*, 558 F. Supp. 2d 411, 420 (E.D.N.Y. 2008).  Although those who feel they are victims of federal crimes will and should attempt to convince interested agencies to pursue prosecution, they cannot dictate the manner, timing, or quantity of conferrals.  In light of her interaction with the SDNY, the Government fulfilled its obligation to confer with Jordan during its purported investigation of the Financial Frauds.  To hold otherwise would unnecessarily and unreasonably burden the DOJ and its prosecutors.

## B.    The Right to Proceedings Free From Unreasonable Delay

Jordan next claims that the Government violated her "right to proceedings free [from] unreasonable delay."  Pet. at 3; 18 U.S.C. § 3771(a)(7).  Courts have consistently found that this provision does not provide any substantive right, but rather "'confer[s] participatory rights on the victim,' that is, the right to object to delay and ask the Court to hold both government and defendant

---

[6] Jordan does not argue that the CVRA requires the government to confer with the victim herself, as opposed to the victim's chosen representative.  Indeed, the CVRA provides that "[t]hese rights may be enforced by the crime victim or the crime victim's lawful representative."  18 U.S.C. § 3771(b)(2)(B)(i).

to what the Speedy Trial Act already requires." *Rubin*, 558 F. Supp. 2d at 427 (quoting *United States v. Turner*, 367 F. Supp. 2d 319, 334 (E.D.N.Y. 2005)).  Indeed, "[t]he Senate sponsors of the CVRA were explicit in their view that the statutory right to proceedings free from unreasonable delay neither 'curtail[s] the Government's need for reasonable time to organize and prosecute its case' nor 'infringe[s] on the defendant's due process right to prepare a defense.'" *Turner*, 367 F. Supp. 2d at 334 (quoting 150 Cong. Rec. S10911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl)).

At oral argument, Jordan clarified that she is objecting not to delays in any criminal proceedings but rather delays in the Government's response to her conferral requests. *See* Oral Arg. Tr. at 40:1–4.  Even if a delay in providing a reasonable opportunity to confer could be viewed as a delay in *proceedings*, for the reasons described above, the Government has fulfilled its conferral obligations.  As such, Jordan's delay claim fails.

### C.    The Right to be Treated with Fairness, Respect, and Dignity

Jordan also claims that the Government violated her CVRA right to "be treated with fairness and with respect for the victim's dignity and privacy." Pet. at 3; 18 U.S.C. § 3771(a)(8). "Neither the text of the statute nor its legislative history provides guidance as to what specific procedures or substantive relief, if any, Congress intended this provision to require or prohibit." *Turner*, 367 F. Supp. 2d at 335.  As the *Rubin* court noted, "[w]hile this provision must be read liberally as giving courts and the government the mission to do all that they can to vindicate a victim's legitimate requests for fairness, respect and dignity, the Court doubts, strongly, that the authors of the statute succeeded in doing more." 558 F. Supp. 2d at 427.

Here, Jordan claims that the Government impinged on this right when it rejected her requests for additional meetings after the one that occurred in May 2011.  In particular, Jordan alleges that prosecutors declined to meet with her because the office of the District Attorney of

New York County "requested that there be no face-to-face meeting between Jordan and federal prosecutors" in light of its pending case against her. Pet. ¶¶ 71–72 ("[I]n curious deference to the wishes of state prosecutors . . . [AUSAs] refused to meet with Jordan."). She argues that "[s]uch inexplicably collusive behavior undermines the very spirit of the CVRA and its express mandate to treat Jordan 'with fairness and with respect for [her] dignity and privacy,' as the victim of Mirra's enterprise's federal crimes." *Id.* ¶ 72.

While the Court must ensure that the Government meets its obligation to treat victims with dignity and respect, the mere allegation that it chose not to meet with Jordan again, after prosecutors and law enforcement considered her accusations on numerous occasions, does not constitute a plausible deprivation of this right—"[e]ven assuming that this right attaches before an offense has been charged." *Stegman v. United States*, No. 14-CV-2445 (JWL), 2015 WL 728487, at *2 (D. Kan. Feb. 19, 2015). Jordan alleges that federal law enforcement officers from the FBI and HHS "met[] with her repeatedly," Pet. ¶ 90, that an AUSA for the SDNY held a meeting with her chosen representative, *id.* ¶¶ 39–40, and that multiple federal prosecutors from different districts received and promised to review the files she provided, *see id.* ¶¶ 39, 48 (SDNY); ¶¶ 49–50 (EDPA). Jordan corresponded not only with agents and line prosecutors, but at one point spoke with the "First Ass[istant] US Attorney . . . of the Eastern District [of Pennsylvania]" who purportedly "was apologetic" for the lack of response from his office, "explained that the case was being assigned to . . . the (then) Chief of their Criminal Division," and "asked [Jordan's attorney] to re-send the material to both the [Chief of the Criminal Division] and himself again." *Id.* ¶ 50. Although the relevant prosecutors' offices either have yet to file an indictment or ultimately declined to do so, they did not fail to accord Jordan the fairness, dignity, and respect required by the CVRA.

Why the Government declined to meet with Jordan again is irrelevant to this analysis. Although she asks this Court to scrutinize the prosecutors' reasons for refusing to do so, the CVRA right to dignity entitles her only to fair and respectful treatment—which she has received. Even accepting as true that prosecutors refused to meet with Jordan due to her then open murder case, in deference to the District Attorney, the CVRA bars this Court from second guessing the Government's prosecutorial decisions. 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."); *see also Thetford*, 935 F. Supp. 2d at 1282 ("These rights, however, do not extend to giving crime victims veto power over the prosecutor's discretion."); *Rubin*, 558 F. Supp. 2d at 418 ("[T]he CVRA, for the most part, gives victims a voice, not a veto."); *United States v. BP Products N. Am. Inc.*, No. CRIM. H-07-434, 2008 WL 501321, at *11 (S.D. Tex. Feb. 21, 2008) ("Decisions on whether to charge, who to charge, and what to charge, are all in the prosecutor's discretion.").

### D.    Investigative Files

Jordan also asserts that the CVRA requires that the Government "furnish the documents which further demonstrate Mirra's status as a criminal perpetrator." Pet. ¶ 81. The Petition recounts rejected Freedom of Information Act requests, *see id.* ¶¶ 74–80, and demands that the Government "disclose the existence of any and all investigations of Raymond A. Mirra, closed or ongoing," *id.* at 36.

"Any information-gathering aspect of [the CVRA] is necessarily circumscribed, in the first instance, by its relevance to a victim's right to participate in the federal criminal proceedings at hand and to do so within the bounds demarked by the CVRA." *Rubin*, 558 F. Supp. 2d at 425. For example, in connection with the right to participate in court proceedings, the CVRA may entitle a victim to "information necessary to form and communicate the victims' views to the

court." *BP Products*, 2008 WL 501321, at *14. Alternatively, to pursue statutory compensation, a victim may seek "information from the government in connection with restitution." *Rubin*, 558 F. Supp. 2d at 425. But the CVRA does not entitle victims to investigative information independent of any particular right the statute provides. *See Stegman*, 2015 WL 728487, at *2 ("The United States Attorney, however, does not have an obligation under the CVRA . . . to disclose anything in its investigative file to [the supposed victim]."); *Rubin*, 558 F. Supp. 2d at 425 ("[T]he CVRA . . . does not authorize an unbridled gallop to any and all information in the government's files."); *United States v. Hunter*, No. 07-CR-307 (DAK), 2008 WL 110488, at *1 (D. Utah Jan. 8, 2008) (finding a purported CVRA victim had no right to "review the U.S. Attorney's investigative and discovery files as well as grand jury materials . . . to prove [the petitioner] was a 'victim'"). As Jordan does not allege that the documentation and information she seeks is related to an enumerated provision of the CVRA or any other statute, she is entitled to neither "the documents which demonstrate Mirra's status as a criminal perpetrator," Pet. ¶ 81, nor any other information about the progress of the Government's investigations.

## II.    Healthcare Frauds

The second category of federal crimes for which Jordan alleges she is a victim are the Healthcare Frauds of "black-marketing HIV/AIDS drugs, drug diversion, money laundering and Medicaid fraud." Pet. ¶ 85. In contrast to her allegations regarding the Financial Frauds, Jordan asserts that prosecution of the Healthcare Frauds has moved beyond the investigation stage and is currently post-indictment. *See id.* ¶ 32 (citing Superseding Indictment, *United States v. Viera*, S2 11-CR-1072 (DLC) (S.D.N.Y. Aug. 14, 2012)). In particular, Jordan alleges that Mirra "had to have been either a person of interest, a subject or a target of this wide-ranging multi-agency investigation." *Id.* ¶¶ 32–33. She also suggests that Mirra is likely one of the defendants in "four

of the thirteen unresolved prosecutions [that] are sealed." *Id.* ¶ 13. From these allegations, she argues and the Court agrees, that the Petition supports an inference that Mirra is either under indictment or has "received non-prosecution agreements or plea deals in regard to" the Healthcare Frauds. *Id.* ¶ 88; *see also* Oral Arg. Tr. at 28:21–29:1.

For the Healthcare Frauds, Jordan argues that the Government deprived her of each of the three rights discussed above as well as the right to be informed in a timely manner of any plea bargain or deferred prosecution agreement. Pet. at 3; Oral Arg. 41:21–23. Jordan, however, is not entitled to any CVRA remedies in connection with these rights because she was not "directly and proximately harmed" by the Healthcare Frauds. 18 U.S.C. § 3771(e)(2)(A). Accordingly, she is not a victim under the statute.

Jordan first argues that she is a victim of the Healthcare Frauds because "the monies fraudulently transferred from Jordan's personal bank accounts . . . were used by Mirra [as] the functional operating capital" for the Healthcare Frauds. Pet. ¶ 35. This argument is unavailing. Consider the Second Circuit's decision in *In re Rendon Galvis*, 564 F.3d 170 (2d Cir. 2009). There, the district court held that an individual murdered by a Columbian guerrilla leader did not qualify as a victim under the CVRA in a case in which the defendant was charged not with the murder but with importing drugs. *Id.* at 173. The circuit agreed, concluding that although the defendant "was, to some extent, responsible" for the purported victim's murder, "there was insufficient evidence of a nexus between [his] death and [the defendant's] participation in the charged conspiracy to import cocaine." *Id.* at 175. The court reasoned that "[w]hile the evidence may suggest some linkages between [the decedent's] murder and the drug conspiracy, we do not find any clear error in the district court's conclusion that [the decedent] ultimately failed to show the requisite causal connection between the two." *Id.* In other words, while the decedent's representatives alleged a

relationship between the charged narcotics crime and the murder, his CVRA claim failed because he could not allege that the charged narcotics conspiracy was itself the cause of the harm.

Here, Jordan alleges that Mirra used her funds to finance his Healthcare Frauds. Pet. ¶ 35. Just as in *Galvis*, however, the charged Healthcare Frauds for which Jordan argues she is a victim did not *cause* the "financial pillaging" that directly and proximately harmed her; that, rather, was caused by the Financial Frauds described above. *See Galvis*, 564 F3d at 175; Pet. ¶ 5; *see also In re McNulty*, 597 F.3d 344, 346–48 (6th Cir. 2010) (rejecting CVRA claim of an individual who was fired for refusing to participate in an illicit antitrust scheme because the antitrust violations did not cause his firing even if the firing advanced the antitrust offenses); *United States v. Sharp*, 463 F. Supp. 2d 556, 566 (E.D. Va. 2006) (dismissing CVRA claim of an abuse victim who claimed that the defendant, charged with narcotics distribution, sold drugs to her abuser that caused the abuse, because the causal connection between the crimes was too tenuous). Jordan cannot therefore claim to be a victim on this basis.

Jordan also claims to be a victim of the Healthcare Frauds because Mirra laundered illegal proceeds through accounts that—unbeknownst to her—bore her name. Specifically, the Petition states:

> The enterprise then ensnared Jordan in a complex network of offshore trusts, limited liability companies and bank accounts, forging her name to seminal financial instruments to establish and manipulate these entities without Jordan's knowledge. Through these clandestine offshore vehicles, Mirra and his criminal associates laundered illicit gains from their healthcare fraud.

Pet. ¶ 9. These allegations are also insufficient to make Jordan a victim under the CVRA. The Petition does not explain how the deposit and withdrawal of funds into a fraudulent account Jordan did not know to exist harmed her, let alone how it did so directly and proximately. Moreover, as the Second Circuit has repeatedly held in another context, "the victim of money laundering is

18

'ordinarily society at large,'" and not any particular individual, because "[s]ociety is harmed when, for example, the ill-gotten gains from a criminal enterprise are allowed to be used for profit." *United States v. Sabbeth*, 262 F.3d 207, 221 (2d Cir. 2001) (quoting *United States v. Napoli*, 179 F.3d 1, 7 (2d Cir. 1999)); *see also United States v. Crum*, No. 1:05 CR 65, 2006 WL 4102280, at *2 n.2 (S.D. Ohio Apr. 13, 2006) (refusing to accord victim status for money laundering under the Mandatory Victims' Rights Act because "society at large is generally considered to be the victim of this offense" (citing *United States v. Szur*, 289 F.3d 200, 215 (2nd Cir. 2002)). Jordan is therefore not entitled to CVRA remedies for the Healthcare Frauds.

### III.   RICO

Lastly, Jordan alleges that she is a victim of a RICO conspiracy that combines both categories of crimes discussed above. Jordan claims to "have consulted with both former law-enforcement agents and prosecutors who confirm that the above-referenced agencies were investigating the large-scale activities of Mirra's enterprise, and his omission from any existing indictments bespeaks a wider, ongoing investigation within the context of a potential RICO prosecution." Pet. ¶ 33. Under this theory, the Financial Frauds perpetrated directly against Jordan and the illegal Healthcare Frauds under indictment are predicate acts of a larger RICO enterprise for which she contends she is a "victim . . . as that term is clearly defined in the CVRA." *Id.* ¶ 34. Essentially, by alleging the possibility of a RICO charge, Jordan attempts to shoehorn the crimes for which she is an alleged victim into the verifiable healthcare indictments for which she is not.

Even accepting as true that prosecutors are or were at some point contemplating charging Mirra in a RICO conspiracy, the Government has fulfilled its obligations at this time. While Jordan attempts to combine the Financial and Healthcare Frauds into a purported RICO prosecution, she acknowledges that this theory has not yet been adopted by the Government. The Petition

recognizes that the existing healthcare indictments do not include any RICO charges, detail any frauds perpetrated against Jordan, or even name Mirra as an offender. *See id.* ¶¶ 32–33 (citing Superseding Indictment, *United States v. Viera*, S2 11-CR-1072 (DLC) (S.D.N.Y. Aug. 14, 2012)). The Petition indeed states that there exists, at most, "a potential criminal RICO prosecution." *Id.* ¶ 33. Based on Jordan's allegations, therefore, the Government has pursued the alleged prosecution of a "potential" RICO indictment no further than it has for the Financial Frauds: it may be investigating, but has done nothing more. As described above, Jordan had an opportunity to confer with an attorney for the Government in 2011 and, to date, the Government has declined to indict Mirra or offer him a pre-indictment disposition for any crimes for which Jordan can claim to have been directly and proximately harmed. At this nascent stage, the Government has thus satisfied its obligations under the CVRA.

## CONCLUSION

It is critical to our system of justice that the Government treat the victims of federal crimes with fairness, respect, and dignity. The CVRA requires as much, as does common courtesy and good prosecutorial practice. The scope of the CVRA, however, is not limitless. It, for example, applies only to those "directly and proximately harmed as a result of the commission of a Federal offense," is limited in part by what is "reasonable," and may in no way "be construed to impair the prosecutorial discretion of the [Government]." In this case, even accepting all the allegations as true, where Jordan was given a reasonable opportunity to confer with the Government about the only crimes for which she is a victim—none of which have yet been charged—she is entitled to no more. The Government's motion to dismiss the Petition is thus granted and the Court respectfully directs the Clerk of Court to close the case.

Dated:    March 29, 2016
          New York, New York

                                        Ronnie Abrams
                                        United States District Judge